[Civ. No. 5094. Second Appellate District, Division Two.—March 27, 1929.]

MARTIN E. GEIBEL, Appellant, v. BURR CREAMERY CORPORATION, Respondent.

Martin E. Geibel, *in pro. per.,* for Appellant.

Farrand & Slosson for Respondent.

CRAIG, J.—The appellant, an attorney and counselor at law, instituted this action for a balance alleged to be due him as attorney's fees upon an open book account. Respondent admitted having paid the sum of $100, but denied further liability. Pursuant to trial before the court without a jury, it was found and adjudged that the defendant did not become indebted to the plaintiff in any sum for legal services, or for moneys paid out, on a book account, or otherwise, in connection with the litigation alleged, or in any other cause or proceeding. The plaintiff appealed, contending that the judgment and findings were contrary to and not supported by the evidence.

It appears that for some time prior to the commencement of the proceedings out of which this controversy arose, a firm or combination known as the Los Angeles Creamery Company, for whom appellant was the attorney, had been engaged in collecting and returning to the various milk distributing companies in Los Angeles empty bottles, crates and cans bearing the marks or brands of the respective owners. During such service, and about two months previously to the relations between the parties to this appeal, in which the alleged services were rendered, an agreement in writing, dated May 1, 1920, was signed by the Los Angeles Creamery Company, a corporation, designated as "Exchange Agent," and nearly a score of individuals and corporations dealing in milk and other dairy products, therein designated as "Owners," among which latter were the Burr Creamery Company, respondent above named. By the terms of said agreement the parties recited that whereas the distributors had found it necessary to operate a bottle exchange in order to avoid retaining containers of others than the true owners, the first party agreed to perform such service, and the distributors agreed to pay the exchange agent therefor, at certain stipulated rates, upon receipt of its bills which should be rendered each month. It is undisputed that investigations, co-operation

with the district attorney's office, procuring of search-warrants, and other outside work of the so-called bottle exchange in recovering property of the various dealers were in charge of two men named Weaver and Volen. On or about July 1, 1920, respondent corporation, through its manager, E. Burr, complained to Volen that about seventy-five of its milk cans were in possession of Albert Deike and Gertrude Deike, doing business under the name and style of Rosemead Dairy. Volen attempted to recover the cans by means of a search-warrant, and, failing in this, consulted Weaver, who directed Volen to take the matter up with appellant herein, as attorney for the exchange agent, as he had done upon a previous occasion, in 1916. Volen testified that he visited the offices of appellant, which were conducted under the firm name of Lloyd, Cheney & Geibel, stating that he had been sent by Weaver, and requesting that civil proceedings be instituted for the recovery of about seventy-five milk cans belonging to the Burr Creamery Corporation; that he had previously consulted with E. Burr, and that the latter had informed the witness that "it was up to the bottle exchange to get the cans"; and to "go ahead with it; I have nothing to do with that. I am paying the Los Angeles Bottle Exchange for service." It further appears that at Volen's request, Burr called at appellant's office. Burr testified that he went to appellant's office at the latter's request; that "Mr. Volen told me that it would be necessary to file a civil suit for the cans; and I told him distinctly it was up to the bottle exchange to get our cans the same as other creameries." This witness was asked the following questions, to which he replied: "Q. Mr. Burr, . . . did you make any statement to Mr. Geibel that you wished to employ him exclusively? A. I certainly did not. Q. Was there anything said about his being employed at all one way or the other? A. Never." Appellant thereafter prepared and filed a suit in replevin, undertakings were furnished, and the sheriff promptly obtained seventy milk cans from the defendants in that proceeding, which was thereupon dismissed. Appellant kept an itemized account of charges for consultations, preparation and filing of pleadings, and for expenses incidental to various steps taken in the suit, including its dismissal, aggregating $460 One hundred and eight dollars and forty cents was credited

as having been received on account, and the instant suit against the Burr Creamery Corporation was instituted for the balance, upon an alleged "book account," though appellant concedes that he received but $100 from respondent, $30.75 of which was expended. Appellant contends that the $100 was advanced as a retainer, whereas the respondent insists that it was merely an advance for costs and expenses, although the witness Burr was not permitted to testify further than that the check was drawn at Volen's suggestion, and that he had no conversation with the plaintiff regarding compensation or court expenses.

The appellant strenuously urges throughout a somewhat extensive argument and analysis of the pleadings and testimony that he was employed by the Burr Company to represent it, and he quotes from much of his own testimony in conflict with that of witnesses called on behalf of the respondent. No attempt is made, however, to dispose of the fact that he was attorney for the exchange agency whose duty it was for an agreed compensation to perform such services without further expense to the contracting creamery companies. It is further obvious that neither Volen nor Weaver, who acted as intermediaries between appellant and Burr, was in the employ of the latter nor had authority to bind him in the employment of counsel. They were performing services for the Los Angeles Creamery Company, and suggested that Burr see its attorney, appellant herein. Beyond that, the evidence nowhere tends to connect the respondent corporation in any contractual relationship with appellant. The witness T. H. Brice, manager of the Milk Producers' Association expressly stated under oath: "Mr. Burr called me and asked me to come and go up with him to see the Bottle Exchange attorney. . . . I asked him why we didn't get our own attorney, and he stated that this didn't cost us anything; it was bottle exchange work." Burr testified that appellant had at no time mentioned a retainer or the payment of expenses.

As we have observed, there is considerable conflicting evidence upon the details of the whole transaction. There is in the main, however, no room for dispute of the fact that respondent contracted in writing with appellant's client, for a consideration, to collect and return its missing receptacles. This being true, it was but natural and logical that

representatives of the exchange agent should upon occasion therefor refer to the latter's counsel members of the association or compact for whose benefit they were employed    There is apparently no evidence tending to reveal the conditions of appellant's employment by the exchange, nor the terms upon which respondent might eventually adjust with it such advances as appear to have been made for expenses, but with these we are not here concerned.    That the judgment is sufficiently supported by the evidence to require an affirmance, we think is patent.

Other questions as to whether or not appellant properly sued upon a book account, or individually instead of in his firm's name, do not in view of the conclusion reached, require discussion.

The judgment is affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.